## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

FEDERALTRADE COMMISSION,

     Plaintiff,

     v.

K W TECHNOLOGY INC., a New York
corporation;

K W TECHNOLOGY NV INC., a Nevada
corporation;

GARY KONG, individually and as president of K
W TECHNOLOGY INC. and co-owner and
president of K W TECHNOLOGY NV INC.;

TIMOTHY WETZEL, individually and as chief
executive officer and chief technology officer of K
W TECHNOLOGY INC. and co-owner of K W
TECHNOLOGY NV INC.,

     Defendants

**Case No. 23-CV-6633**

## COMPLAINT FOR PERMANENT INJUNCTION,
## MONETARY RELIEF, CIVIL PENALTIES, AND OTHER RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.    The FTC brings this action under Sections 5(a)(1), 5(m)(1)(A), 12, 13(b),

16(a)(1), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1),

45(m)(1)(A), 52, 53(b), 56(a)(1), and 57b, and Section 1401 of the COVID-19 Consumer

Protection Act of the 2021 Consolidated Appropriations Act ("CCPA"), Pub. L. No. 116-260, §

1401, 134 Stat. 1182, 3275-76, which authorizes the FTC to seek, and the Court to order,

permanent injunctive relief, monetary relief, civil penalties, and other relief for Defendants' acts

or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and Section 1401 of the CCPA, in connection with the manufacturing, marketing, advertising, distribution and sale of a product called The 1 Virus Buster Invisible Mask (herein referred to as the "Invisible Mask").

## SUMMARY OF CASE

2.      Taking advantage of the onset of the Coronavirus Disease 2019 ("COVID-19") Pandemic, Defendants began marketing their product called the Invisible Mask. The Invisible Mask is depicted in advertising as a badge that is to be worn around the neck or on a lapel. Defendants have used various means to promote the Invisible Mask, such as websites, social media accounts, and YouTube. Defendants extol the Invisible Mask's alleged virus-killing capabilities that they claim prevent up to 98% of infections from COVID-19 and other viruses, bacteria, pathogens, and allergens.

3.      Defendants claim the Invisible Mask works by creating an invisible, three-foot gaseous barrier that provides nearly complete disease protection, including from COVID-19. They also claim they have the scientific evidence to prove it really works.  In reality, Defendants lack any competent and reliable scientific evidence to substantiate their claims about the ability of the Invisible Mask to prevent infection from disease, including from COVID-19.  In fact, there is no published report of any well-controlled human clinical study to demonstrate that the Invisible Mask can prevent COVID-19.

4.      Since at least July 2020, Defendants have been aware that their claims that the Invisible Mask prevents COVID-19 are unsubstantiated and deceptive, when the FTC warned Defendants that they lacked competent and reliable evidence for their COVID-19 claims and should stop making their deceptive and unsubstantiated claims.

5.      Although the FTC warned Defendants to immediately cease making such claims about the Invisible Mask, they have blatantly ignored the FTC's warnings and continue to make the same deceptive health claims about the Invisible Mask.

6.      Defendants have also deceptively claimed that government entities such as the FDA and EPA have approved the Invisible Mask, or its materials, or claimed that the Invisible Mask is made in a government-approved facility. Defendants have even advertised using a fake "Certification of Registration" that includes an image of the FDA's logo, which Defendants had no authorization by the FDA to use.

7.      Defendants charge approximately $29.99 for the Invisible Mask and have generated gross revenues of at least $100,000 since March 2020 for the Invisible Mask.

8.      Because Defendants have persisted in their false and misleading claims about the Invisible Mask, the FTC is bringing this action, and alleging three counts of violations of the FTC Act and the CCPA regarding: (1) Defendants' deceptive claims that the Invisible Mask has the ability to prevent COVID-19; (2) Defendants' false claims that they possess scientific proof that the Invisible Mask prevents airborne diseases, including COVID-19; and (3) Defendants' false claims that governmental entities like the FDA and EPA have approved the Invisible Mask, the Invisible Mask's materials, or the manufacturing facilities for the Invisible Mask.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

10.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), and 15 U.S.C. § 53(b).

**PLAINTIFF**

11.     The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys, 15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces Section 12 of the FTC Act, 15 U.S.C. § 52, which prohibits false advertisements for food, drugs, devices, services, or cosmetic in or affecting commerce.  The FTC also enforces the CCPA, which makes it unlawful under Section 5 of the FTC Act for any person to engage in a deceptive act or practice in or affecting commerce associated with the treatment, cure, prevention, mitigation, or diagnosis of COVID-19 for the duration of the COVID-19 public health emergency.

**DEFENDANTS**

12.     Defendant K W Technology Inc. ("KW Tech") was incorporated in the state of New York on March 17, 2020. KW Tech markets, advertises, and sells the Invisible Mask, to be used for disease prevention, including from COVID-19. The New York Secretary of State lists KW Tech's address as 39-01 Main Street, Suite 605, Flushing, NY  11354. KW Tech also uses the address of 6967 Speedway Boulevard, Building AA, Unit 101 & 102, Las Vegas, NV 89102. KW Tech uses the phone number (718) 888-7105. At all times relevant to this Complaint, acting alone or in concert with others, Defendant KW Tech has advertised, marketed, sold, distributed, or manufactured the Invisible Mask to consumers throughout the United States.

13.     K W Technology NV Inc. ("KW Tech NV") was incorporated in the state of Nevada on December 15, 2020. KW Tech NV's stated mission is to "[d]eliver an alternative product, which will enhance safety and protection:  an ability backed by independent laboratory

scientific testing to advance the intake of airborne viruses and bacteria having a negative impact on individuals in and out of a condition of pandemic." KW Tech NV is the identified sponsor of a case study that Defendants claim is scientific proof of the ability of the Invisible Mask to kill viruses and bacteria, including COVID-19.  The Nevada Secretary of State lists KW Tech NV's address as 4560 Donovan Way, Suite M, North Las Vegas, NV 89081, which is also the assembly and manufacturing location of the Invisible Mask relevant to the allegations set forth in this Complaint. As with KW Tech, KW Tech NV has used the addresses of 6967 Speedway Boulevard, Building AA, Unit 101 & 102, Las Vegas, NV 89102 and 3901 Main St., Suite 605, Flushing, NY 11354. As with KW Tech, KW Tech NV uses the phone number (718) 888-7105. At all times relevant to this Complaint, acting alone or in concert with others, Defendant KW Tech NV has advertised, marketed, sold, distributed, or manufactured the Invisible Mask to consumers throughout the United States.

14.     Gary Kong ("Defendant Kong") is the president of KW Tech and has provided financial loans to KW Tech, as well as contributed to its overall business strategy. Kong is the co-owner, president, secretary, treasurer, director, and registered agent of KW Tech NV. Defendant Kong is responsible for reviewing and approving marketing and advertising of the Invisible Mask. At all times relevant to this Complaint, acting alone or in concert with others, Defendant Kong has formulated, directed, controlled, advertised, marketed, sold, had the authority to control, or participated in the acts and practices of KW Tech and KW Tech NV, as set forth in this Complaint. Defendant Kong resides in this district, and, in connection with the matters alleged herein, transacts, or has transacted business, in this District and throughout the United States.

15.     Timothy Wetzel ("Defendant Wetzel") is the chief executive officer and chief technological officer ("CTO") of KW Tech and co-owner of KW Tech NV. Defendant Wetzel has claimed to be the inventor of the Invisible Mask and developer of its technology. As the CTO of KW Tech, Defendant Wetzel is also responsible for monitoring the assembly of the Invisible Mask at Defendants' manufacturing location in North Las Vegas, Nevada. Defendant Wetzel is also the contact person for Defendant KW Tech's establishment registration and device listing of the Invisible Mask with the Food and Drug Administration ("FDA"). At all times relevant to this Complaint, acting alone or in concert with others, Defendant Wetzel has formulated, directed, controlled, advertised, marketed, sold, had the authority to control, or participated in the acts and practices of KW Tech and KW Tech NV, as set forth in this Complaint. In connection with the matters alleged herein, Defendant Wetzel transacts, or has transacted business, in this District and throughout the United States.

## COMMON ENTERPRISE

16.     Defendants KW Tech and KW Tech NV ("Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below.

17.     Corporate Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions and office locations.

18.     Specifically, at all times relevant to this Complaint, the Corporate Defendants have operated under the unified control of Defendant Kong and Defendant Wetzel.

19.     Defendant Kong and Defendant Wetzel have directed the Corporate Defendants' business and marketing activities interchangeably through business addresses and telephone

numbers shared by the Corporate Defendants, and corporate activities, such as the assembly of the Invisible Mask, housed in the same physical space.

20.     Because these Corporate Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

## COMMERCE

21.     At all times relevant to this Complaint, Corporate Defendants, Defendant Kong, and Defendant Wetzel (collectively "Defendants") have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

22.     On January 31, 2020, Health and Human Services Secretary Alex M. Azar II, pursuant to his authority under Section 319 of the Public Health Service Act, declared a public health emergency, which remained in effect throughout the activities detailed below, and beyond.

23.     Since at least July 2020, Defendants have been marketing, advertising, and selling the Invisible Mask. Defendants have used various means to promote the Invisible Mask, such as websites, social media accounts, and YouTube. Some of these websites include https://kwtechnologynv.com; https://the1virusbusterusa.com; https://the1virusbusterusa.com; https://www.1invisiblemask.com; https://the1invisiblemaskusa.com; and https://virusfighterhub.com.

24.     The Invisible Mask is depicted as a badge, worn around the neck or on a lapel. The demonstration of the product advises the wearer to pull a tab off the front of the Invisible Mask badge, to attach a small pouch of ingredients and hang the badge around the neck or clip it in any article clothing close to the neck, and to discard the product after 30 days of use.

25.     Defendants claim the Invisible Mask badge provides an invisible, three-foot protective gaseous barrier designed for disease protection and prevention, including from COVID-19.

26.     Defendants charge approximately $29.99 for the Invisible Mask and have generated gross revenues of at least $100,000 since March 2020 for this product:



**Defendants' Deceptive Claims About COVID-19 Prevention**

27.     In numerous instances, Defendants have represented that the Invisible Mask is effective in providing nearly complete disease protection from COVID-19, based on these types of claims:

      a.     "THE 1 INVISIBLE MASKS [sic] AGAINST VIRUSES INCLUDING:  COVID 19, DELTA VARIANTS, BACTERIA POLLEN ALLERGIES, OMICRON, ALPHA. UP TO 98%" (the1invisiblemaskusa.com)

      b.     "Kill up to 98% of germs, viruses, and bacteria, that it comes in contact with, up to a 3 feet area." (the1invisiblemaskusa.com)

      c.     "The 1 Invisible Mask Virus Buster, your Airborne diseases prevention badge assists in helping to make your ordinary face mask more efficient to almost 99%." (the1invisiblemaskusa.com)

d.      "THE 1 INVISIBLE MASK OFFERS THREE FEET OF PROTECTION FROM AIRBORNE VIRUSES INCLUDING COVID 19. THIS ADDED PROTECTION IS NEEDED WHEN MASKS ARE REMOVED IN ORDER TO EAT, DRINK AND SPEAK FILLING THAT VOID. THE QUANTUM SCIENCE BEHIND THE TECHNOLOGY ALLOWS FOR THIS PROTECTIVE BARRIER TO SHIELD AGAINST PATHOGENS AND VIRUSES - INCLUDING COVID 19 - FOR UP TO 30 DAYS. "(1invisiblemask.com)

e.      "Kills Most All Viruses Up To 3 Feet" (the1virusbuster.com)

f.      "The 1 Invisible Mask is about airborne illness prevention. It works as an invisible shield that kills viruses, germs, and other allergens. You should feel your best and protected at all times." (the1invisiblemaskUSA.com)

g.      "When certain ions collide with other ions, a reaction takes place. This reaction omits an invisible gas, the point of collision. Lighter than air, this gas collects in a tight area close to your face and neck. When this thin layer of gas gets in contact with floating elements like common germs, viruses, and pathogens, it kills them before they are able to get into the nose, mouth, and eye." (the1invisiblemaskUSA.com)

h.      "OUR RESEARCHERS AND SCIENTISTS EXAMINED HUNDREDS OF THOUSANDS [sic] RESPIRATORY DROPLETS IN THE CONTEXT OF COVID-19. WE DEVELOPED A UNIQUE COMBINATION OF COMPOUNDS BY USING IBM'S QUANTUM COMPUTER TO ACCELERATE THE PROCESS AND GAIN RELIABLE ANSWERS. WHEN USED CORRECTLY, THIS BARRIER KILLS MOST VIRUSES, BACTERIA, AND PATHOGENS BEFORE THEY ENTER THE NOSE, MOUTH, AND EYES. THIS PATENT-PENDING TECHNOLOGY CALLED ISIL-CHLOR ENSURES THE SCIENCE IS BACKING THE POSITIVE RESULTS OF THIS VIRUS KILLER.

THE 1 INVISIBLE MASK IS BASED ON A PROVEN, SIMPLE SCIENCE CALLED 'ION EXCHANGE SCIENCE.' SIMPLY STATED, WHEN CERTAIN IONS COLLIDE WITH OTHER IONS, A REACTION TAKES PLACE. THE REACTION CAUSES SELECT COMPOUNDS, AT THE POINT OF COLLISION, TO EMIT AN INVISIBLE GAS. GAS IS LIGHTER THAN AIR AND COLLECTS

IN A TIGHT AREA. IN THIS CASE, THE LIGHT-WEIGHT POUCH CONTAINING THE INVISBLE BARRIER SITS LOWER THAN ONE'S FACE AND AND [sic] CLIPS ONTO THE CLOTHING OR WORE [sic] LOOSELY AROUND THE NECK SIMILAR TO AN ID BADGE. IN THIS WAY, THE AREA SURROUNDING THE HEAD AND FACE RECEIVES THE BENEFIT OF THIS INVISIBLE, PROTECTIVE FORMULA. A PATENT PENDING TECHNOLOGY CALLED ISIL-CHLOR ENSURES THE SCIENCE BY BACKING UP THE POSITIVE, PROVEN RESULTS OF THIS ONE-OF-A-KIND VIRUS KILLER AS RELIABLE, SAFE, HARMLESS, AND EASY AS 1-2-3 TO USE:

1 - OPEN

2 - ACTIVATE

3 - ATTACH

YOUR PORTABLE PERSONAL BODY BARRIER!

ANYPLACE - ANYWHERE - ANYTIME!"   (1invisiblemask.com)

i.      "The 1 Virus Buster is a new form of delivery of high quality remedy to kill 99.9 percent of virus, germs, bacteria and other allergens in the air up to 3 feet away. The 1 Virus Busters Badge are [sic] made up of chemical compounds found in everyday food and react together to form a harmless, odorless gas around your face. (kwtechnologynv.com)

j.      "The delivery of protection comes in certain, styles [sic]. We found another way to deliver harmless, odorless, tasteless gases in [sic] effective way where it enters the nose mouth and ears. The 1 Virus Buster is a combination of ingredients, it's a group of chemicals that work together to form one compound."  (kwtechnologynv.com)

k.      "THE 1 INVISIBLE MASK SERVES AS AN IDEAL EXTRA LAYER OF PROTECTION FOR INDIVIDUALS THAT MAYBE [sic] EXPOSED TO HARMFUL PATHOGENS, VIRUSES, ALLERGIES AND OTHER PARTICLES IN THE AIR. THE THEORY AND PRINCIPLE REGARDING THIS TECHNOLOGY IS SIMPLE BUT BRILLIANT: PREVENT, DETER OR KILL VIRUSES, BACTERIA AND PATHOGENS FROM ENTERING

THE BODY BY CREATING AN INVISIBLE SHIELD HAT [sic] HAS NO HARMFUL AFFECTS [sic] TO THE USER OR ANYONE AROUND THEM. THIS INVISIBLE SHIELD THAT STOPS, DIVERTS AND KILLS ANY VIRUS COMING INTO RANGE OF ONE'S NOSE OR MOUTH. THE 1 INVISIBLE MASK IS AN [sic] UNIQUE, EFFECTIVE AIRBORNE ILLNESS PREVENTION DEVICE THAT CAN KILL UP TO 98% OF GERMS, VIRUSES, BACTERIA AND ALLERGIES - INCLUDING COVID-19 AND OTHER VARIANTS - WITHIN A 3-FOOT AREA." (1invisiblemask.com)

l.     "OK TO USE IN:

- Schools, Offices, Bus, Subway.
- Markets, Malls, Sporting Events.
- Restaurants & Crowded Areas." (the1virusbuster.com)

28.     Corporate Defendants have sponsored various lab testing results and a case study that purportedly serve as their substantiation and scientific proof that the Invisible Mask can prevent COVID-19. None of their testing results or their case study are well-controlled human clinical trials and they are insufficient to show that the Invisible Mask prevents COVID-19.

29.     These tests include: 1) various analytical reports on the chemical composition of ingredients in the Invisible Mask; 2) an *in vitro* laboratory test purporting to test the efficacy of the Invisible Mask against *Staphylococcus aureus*; and 3) a case study of 598 volunteers who used the Invisible Mask that purportedly measured the product's "ability to kill viruses and bacteria and results on symptoms of allergies." The case study was not randomized, placebo-controlled, or double blinded, and was not conducted by persons qualified by training or experience to perform such a study.

30.     Defendants do not possess competent and reliable scientific evidence to substantiate their claims that the Invisible Mask can prevent COVID-19.

31.     There is no published report of any well-controlled human clinical study to

demonstrate that the Invisible Mask prevents COVID-19.

**Defendants' False Claims that Their Scientific Studies Prove the Invisible Mask
Provides Effective Disease Protection, Including From COVID-19**

32.     On their websites, in connection with the sale of the Invisible Mask, Defendants

claim to have developed the Invisible Mask using "quantum technology" and a technology called

"Isil-Chlor" technology. They represent they possess scientific studies that prove the Invisible

Mask provides protection against virus infection, including COVID-19.

33.     On their websites, in connection with the sale of the Invisible Mask, Defendants

claim their "researchers and scientists have examined hundreds thousand [sic] respiratory

droplets in the context of a [sic] COVID 19," and "used IBM's Quantum Computer" for their

allegedly patent-pending technology called "ISil-Chlor technology."



34.     On their websites, in connection with the sale of the Invisible Mask, Defendants

have represented they have developed the Invisible Mask using their "ISiL-Chlor technology"

that is based on a "proven, simple science called Ion exchange science."



35.     Defendants claim they possess scientific studies that prove the Invisible Mask

provides protection against viruses, including COVID-19, based on statements such as:

    a.      "A PATENT PENDING TECHNOLOGY CALLED ISIL-CHLOR

    ENSURES THE SCIENCE BY BACKING UP THE POSITIVE, PROVEN

    RESULTS OF THIS ONE-OF-A-KIND VIRUS KILLER AS RELIABLE, SAFE,

    HARMLESS, AND EASY AS 1-2-3 TO USE" (the1invisiblemaskUSA.com)

    b.      "This product developed using KW Technology, Patent ISil-Chlor

    Technology. This state of the art technology used Quantum Computing as a tool

    in the development of this airborne diseases prevention device."

    (the1invisiblemaskUSA.com)

    c.      "Proven Lab Results" (the1invisiblemaskUSA.com)

    d.      SUCCESSFUL LAB RESULTS AT KW TECHNOLOGIES HAVE

    BEEN DOCUMENTED, FILED, PROVEN AND DEEMED NOT HARMFUL

    TO CHILDREN OR ADULTS (1invisiblemask.com)

e.      "It is backed by laboratory testing from several independent USA

Laboratory's [sic]!" (kwtechnologynv.com)

f.      "It is the only FDA registered and scientifically proven product of its

kind." (kwtechnologynv.com)

g.      "KW Technology created 'The 1 Virus Buster Badge.' It was formulated

by using the latest A.I. Technology using Quantum computing and ION Science."

(KWTechnologyNV.com)

**Defendants' Knowledge of Their Deceptive Claims**

36.     Since at least July 2020, Defendants have been aware that their coronavirus-

related prevention or claims regarding devices like the Invisible Mask are unsubstantiated and

deceptive.

37.     Defendants received and acknowledged receipt of a warning letter from the FTC

dated July 28, 2020. The FTC's letter addressed Defendants' unsubstantiated claims made on

their website, www.the1virusbuster.com, and their Facebook page for a product called "The 1

Virus Buster Card" – a card worn around the neck or clipped to clothing, analogous to the

Invisible Mask – that could purportedly prevent COVID-19.  Examples of Defendants' unlawful

claims identified in the letter include:

a.      "Our powerful sterilization anti-virus, bacteria's [sic] cards, can kill most

all viruses up to three feet."

b.      "Our company's Virus Buster . . . products are designed to help you and

your family fight off a new generation of viruses and bacteria's [sic], never before

encountered worldwide."

c.       "From our research, from 100's COVID 19 patients test, we found the

2019-nCoV Coronavirus was a new generation of viruses…. We turned to Super Power Quantum Computing. We are entering a new era of computing to fight a new era of viruses and diseases."

d.      "Introducing the 1Virus Buster, created by KW Technology, Inc. It uses quantum theory technology, combines known virus and bacteria killing compounds. It is safe, simple, and effective. All you need to do is hang it around your neck or attach it to your collar, close to your mouth and nose. If used correctly, it kills 99.9% of most harmful bacteria and viruses, which live in the air you breathe, within a three-foot radius. The time is now to protect yourself and your family. Get the 1VirusBuster today."

38.      In addition to warning Defendants that it is illegal to advertise that a product can prevent human disease without competent and reliable scientific evidence, the FTC's July 28, 2020, warning letter notified Defendants that: "[f]or COVID-19, no such study is currently known to exist for the [The 1 Virus Buster Cards]."

39.      The FTC's letter also advised Defendants that their "coronavirus-related prevention" claims regarding [The 1 Virus Buster Cards] were "not supported by competent and reliable scientific evidence" and that they "must immediately cease making all such claims." The letter further advised Defendants "to review all other claims for your products and immediately cease making claims that are not supported by competent and reliable scientific evidence."

40.      On or about July 30, 2020, Defendant Wetzel acknowledged the FTC's warning letter, and represented to the FTC that the unsubstantiated COVID-related claims would be removed from Defendants' advertising.

41.     In complete disregard of the FTC's warning letter and in numerous instances, Defendants are continuing to make the same or similar claims that the Invisible Mask can prevent human disease, including COVID-19, while failing to possess competent and reliable scientific evidence to support Defendants' claims set forth in this Complaint.

**Defendants' Deceptive Claims of Government Approval**

42.     In numerous instances, Defendants represent that the Invisible Mask or its materials are government-approved, or that the Invisible Mask is made in a government-approved facility. For example, on their websites, Defendants have made claims such as:

a.      "The Virus Buster is probably the most effective product! It gives you that added layer of security.  It's safe, patent pending and produced in an FDA registered facility. So you know it's safe and is working for you! Just clip to your collar and it does the rest!  Why not give it a try?" (virusfighterhub.com)

b.      "FDA Approval" (the1invisiblemaskusa.com)

c.      "Our products only use the highest grade of materials, its [sic] EPA-approved and deemed that is not harmful to wear." (the1invisiblemaskUSA.com)

d.      "OUR PRODUCTS ONLY USE THE HIGHEST GRADE OF MATERIALS THAT ARE EPA APPROVED." (1invisiblemask.com)

e.      "Made by KW Technology the FDA registered manufacturer." (the1invisiblemaskusa.com)

f.      "FDA registered and USA Patent Pending" (the1virusbuster.com)

"KW TECHNOLOGY IS FDA CERTIFIED APPROVED AND INSURED" (kwtechnologynv.com)

43.     On their websites, in connection with their sale of the Invisible Mask, Defendants have also published a "Certification of Registration" with the FDA's logo on it:



44.     Defendants' certificate is fake. The FDA does not issue certificates of registration to manufacturers of medical devices. The FDA logo is for the official use of the FDA and not for use on private sector materials.

45.     Businesses (or establishments) involved in the production and distribution of medical devices in the United States are required to register annually with the FDA. While KW Tech registered its establishment with the FDA, the FDA has not evaluated the Invisible Mask. The FDA has not inspected or approved Defendants' manufacturing facility. The FDA also has not approved, authorized, or cleared the Invisible Mask or claims that it can prevent COVID-19 or other diseases.

46.     The EPA has not approved the Invisible Mask and has not reviewed the product for efficacy in preventing COVID-19.

47.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate the FTC Act and the CCPA.

## VIOLATIONS OF THE FTC ACT

48.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

49.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

50.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the Invisible Mask is a "device" as defined in Section 15(d)

of the FTC Act, 15 U.S.C. § 55(d).

51.     Enacted on December 27, 2020, the CCPA makes it unlawful, for the duration of

the public health emergency declared on January 31, 2020, pursuant to Section 319 of the Public

Health Service Act, for any person, partnership, or corporation to "engage in a deceptive act or

practice in or affecting commerce in violation of Section 5(a) of the [FTC] Act (15 U.S.C. 45(a))

that is associated with . . . the treatment, cure, prevention, mitigation, or diagnosis of COVID-

19." Pub. L. 116-260, 134 Stat 1182, Title XIV, Section 1401(b)(1). As of the date of the filing

of this Complaint, the public health emergency remains in effect.

52.     The CCPA provides that "[a] violation of subsection (b) shall be treated as a

violation of a rule defining an unfair or deceptive act or practice prescribed under Section

18(a)(1)(B) of the [FTC] Act." 15 U.S.C. § 57a(a)(1)(B).

53.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by

Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as

amended, and as implemented by 16 C.F.R. § 1.98(d), authorizes this Court to award monetary

civil penalties of up to $50,120 for each violation of Section 5(a) of the FTC Act pursuant to the

CCPA, 16 C.F.R. § 1.98(d).

## COUNT ONE

54.     In numerous instances in connection with the advertising, marketing, promotion,

offering for sale, or sale of the Invisible Mask, including through the means described in

Paragraphs 22-47 of this Complaint, Defendants have represented, directly or indirectly,

expressly or by implication, that the Invisible Mask prevents COVID-19.

55.     On or after December 27, 2020, Defendants made the representations set forth in

Paragraph 54, which are associated with the prevention of COVID-19.

56.     The representations set forth in Paragraph 54-55 are false or misleading or were not substantiated at the time the representations were made.

57.     Therefore, the making of the representations set forth in Paragraph 54-55 of this Complaint constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

58.     Defendants committed the violations set forth in Paragraphs 56-57 with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

## COUNT TWO

59.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the Invisible Mask, including through the means described in Paragraphs 22-47 of this Complaint, Defendants have represented, directly or indirectly, expressly or by implication, that the Invisible Mask is scientifically proven to provide protection against viral infection, including COVID-19;

60.     On or after December 27, 2020, Defendants made the representations set forth in Paragraph 59, which are associated with the prevention of COVID-19.

61.     In truth and in fact, the Invisible Mask is not scientifically proven to prevent COVID-19.

62.     The representations set forth in Paragraph 59-61 are false or misleading or were not substantiated at the time the representations were made.

63.     Therefore, the making of the representations as set forth in Paragraphs 59-61 constitutes a deceptive act or practice, and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§45(a) and 52.

64.     Defendants committed the violations set forth in Paragraph 63 with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C §45(m)(1)(A).

## COUNT THREE

65.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the Invisible Mask, and through the use of the government logo, including through the means described in Paragraphs 22-47 of this Complaint, Defendants have represented, directly or indirectly, expressly or by implication, that governmental entities, including the FDA and EPA, have approved the Invisible Mask, Defendants' efficacy claims about the Invisible Mask, the Invisible Mask's materials, or Defendants' manufacturing facilities.

66.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 65, no government entity has given its approval to the Invisible Mask, the efficacy of the Invisible Mask, the Invisible Mask's materials, Defendants' manufacturing facilities for the Invisible Mask, or for the Defendants' use of a government logo.

67.     The representations set forth in Paragraphs 65-66 are false or misleading, or unsubstantiated at the time the representations were made.

68.     Therefore, the making of the representations set forth in Paragraphs 65-66 of this Complaint is constitutes deceptive acts or practices and the making of false advertisements in violation of Section 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## CONSUMER INJURY

69.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and CCPA. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## **PRAYER FOR RELIEF**

Wherefore, the FTC requests that the Court:

A.      Enter a permanent injunction to prevent future violations of the FTC Act and the

CCPA by the Defendants;

B.      Impose monetary civil penalties from each Defendant for every violation of

Section 5(a) of the FTC Act pursuant to the CCPA;

C.      Award monetary and other relief within the Court's power to grant; and

D.      Award any additional relief as the Court determines to be just and proper.


                                                    Respectfully submitted,


Dated:  September 6, 2023                            /s/ Robin L. Rock
                                                    ROBIN L. ROCK
                                                    Attorney

                                                    FEDERAL TRADE COMMISSION
                                                    233 Peachtree St., NE
                                                    Suite 1000
                                                    Atlanta, GA 30303
                                                    (404) 656-1368 (telephone)
                                                    (404) 656-1379 (facsimile)
                                                    rrock@ftc.gov